UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **CHERYL WILLIAMS,** ) | |
| individually and on behalf of all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| **CARRINGTON MORTGAGE** ) | |
| **SERVICES, LLC,** ) | |
| Serve: CT Corporation System ) | **JURY TRIAL DEMANDED** |
|     120 South Central Avenue ) | |
|     Clayton, Missouri 63105, ) | |
| ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT

Plaintiff Cheryl Williams, on behalf of herself and all persons similarly situated, for her claims against defendant Carrington Mortgage Services, LLC ("Carrington"), allege as follows:

**NATURE OF THE ACTION**

1. This case involves Carrington's practice of breaching its contractual obligations to its borrowers by collecting "post-payment" interest on loans insured by the Federal Housing Administration ("FHA") without first complying with the uniform provisions of the promissory notes and the FHA regulations governing these loans.

1

2. FHA regulations prohibit lenders from collecting interest from a borrower after the borrower repays the loan in full (i.e., the lender charges interest through the end of the month even when the loan is repaid in full before the end of the month) unless two strict conditions are met: (a) the borrower pays the full unpaid principal on a day "other than an installment due date" and (b) the lender provides certain disclosures to the borrower with "a form approved by the Commissioner [of the FHA]." 24 C.F.R. § 203.558(b) (2014).

3. The Department of Housing and Urban Development ("HUD") requires the use of its approved form because the form meets the objectives of HUD in disclosing to borrowers that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how a borrower can avoid post-payment interest charges (the "Disclosures"). *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8(C).

4. Despite the provisions of the promissory notes and the HUD regulations prohibiting lenders from collecting post-payment interest unless borrowers are provided the Disclosures in an FHA-approved form, Carrington does not use the FHA-approved form. Instead, Carrington uses its own form, which has not been approved by HUD, and fails to provide any disclosures at all to the borrower that post-payment interest is being collected or that such pre-payment interest can be avoided by paying on the first of the month.

5. Because Carrington does not provide any of the Disclosures, and does not use the FHA-approved form as required by the promissory note and the HUD regulations, Carrington's contracts do not permit it to collect post-payment interest from borrowers.

6. Nevertheless, Carrington systematically collected post-payment interest from Plaintiff and the Class in breach of their contracts.

7. Plaintiff and all Class Members, as defined below, are entitled to damages for the injuries they have suffered because of Carrington's unlawful conduct, and Plaintiff brings this action on behalf of herself and all Class Members for breach of contract.

## PARTIES

8. Plaintiff Cheryl Williams is a natural person and citizen of Missouri residing in Kansas City, Missouri.

9. Defendant Carrington Mortgage Services, LLC is a Delaware corporation with its principal place of business in Anaheim, California. Carrington held FHA-insured loans for Plaintiff and other Class Members that have since been paid off in full.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (a) the class has more than 100 members; (b) the amount in controversy exceeds $5 million, exclusive of interest and costs; and (c) Plaintiff and some putative class members are citizens of a different state from Carrington.

11. This Court has personal jurisdiction over Carrington. Among other things, the Plaintiffs' contract was executed in Missouri, Carrington conducts business in Missouri, holds mortgages on real property in Missouri, has breached contracts with people located in Missouri, has caused injuries in Missouri, and generally engages in substantial activity in Missouri.

12. This Court is a proper venue for this action. Carrington is subject to personal jurisdiction in the Western District of Missouri, Western Division, which "[f]or purposes of venue," means that Carrington resides in this judicial district. 28 U.S.C. § 1391(b)(1), (c).

## COMMON FACTUAL ALLEGATIONS

13. Plaintiff, on behalf of herself and all similarly situated persons, seek to recover monetary damages resulting from Carrington's wrongful conduct in collecting post-payment interest from its customers in breach of its promissory notes with its customers and HUD regulations.

### The FHA Supplies Mortgage Insurance to Lenders

14. HUD is a department within the executive branch of the United States government. When HUD was created, Congress re-organized the FHA as an agency within HUD.

15. One of the FHA's roles is to provide mortgage insurance to FHA-approved lenders for loans on single-family homes. The FHA is the world's largest insurer of mortgages.

16. Mortgage insurance protects lenders against borrower defaults. Lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of borrower default. To receive FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and make monthly premium payments.

17. Lenders must be pre-approved to qualify to receive FHA mortgage insurance. Lenders must also comply with HUD regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations. Among other things, HUD regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note. Therefore, each of the approximately 4.8 million FHA-insured loans[1] is documented by a promissory note containing the same uniform provisions.

### The FHA Prohibits Charges of Post-Payment Interest Unless Lenders First Provide Disclosures in an FHA-Approved Form

18. One such provision provides that borrowers will pay interest on unpaid principal:

> BORROWER'S PROMISE TO PAY; INTEREST
> In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $_____), plus interest, to the order of Lender. **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent (_____%) per year **until the full amount of the loan has been paid**.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis added).

---

[1] *See* https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory.

5

Case 4:17-cv-00376-ODS   Document 1   Filed 05/15/17   Page 5 of 19

19. Thus, the borrower must pay interest only on the unpaid principal and once the principal has been paid off, the interest payments should stop as well.

20. From August 2, 1985 through January 20, 2015, the FHA allowed lenders, subject to limitations, to collect "post-payment" interest, which is interest collected by a lender even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because the borrower owes the lender nothing at the time post-payment interest is collected. The lender is penalizing the borrower for paying off their loan before the maturity date.

21. There are strict limitations on when a lender can collect post-payment interest. The FHA prohibits the collection of post-payment interest unless the lender complies with HUD regulations. In turn, HUD regulations require the lender to provide the borrower with Disclosures in an FHA-approved disclosure form.

22. These limitations are reflected in a uniform provision of the promissory notes that must be included in the promissory note documenting every mortgage:

> BORROWER'S RIGHT TO PREPAY
> **Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty**, **on the first day of any mont**h. Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid **for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.** If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 2 (emphasis added).

23. Under this provision of the promissory note, the borrower has the right to prepay the mortgage in full without charge or penalty on the first of any month. The borrower also has the right to prepay the mortgage on days other than the first of the month, but subject to the lender being able to collect post-payment interest if the lender complies with HUD regulations.

24. The relevant HUD regulation is titled "Handling Prepayments" and states that:

> (b) Handling prepayments for FHA-insured mortgages closed before January 21, 2015.
>
> \*\*\*
>
> (2) **With respect to FHA mortgages insured on or after August 2, 1985, but closed before January 21, 2015**, the mortgagee shall not require 30 days' advance notice of prepayment, even if the mortgage instrument purports to require such notice. If the **prepayment is offered on other than an installment due date**, the mortgagee may refuse to accept the prepayment until the next installment due date (the first day of the month), or **may require payment of interest to that date, but only if the mortgagee so advises the mortgagor, in a form approved by the Commissioner**, in response to the mortgagor's inquiry, request for payoff figures, or tender of prepayment.
>
> (3) **If the mortgagee fails to meet the full disclosure requirements of paragraphs (b)(1) and (b)(2) of this section, the mortgagee may be subject to forfeiture of that portion of the interest collected for the period beyond the date that prepayment in full was received** and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558(b) (2014) (emphasis added).

25. Here, Carrington did not have the right to collect post-payment interest because it did not provide Plaintiff and the Class with Disclosures in the FHA-approved form.

7

26. The FHA-approved form is Appendix 8 (C) to the HUD Housing Handbook:

> MORTGAGEE NOTICE TO MORTGAGOR
> (In response to prepayment inquiry, request
> for payoff or tender of prepayment in full)
>
> Mortgagor:_____ Date:_____
> Address:_____ Loan #:_____
> _____ FHA #:_____
>
> This is in reply to your ___(date)___ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.
>
> This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.
>
> The _____(mortgagee name)_____ will:
>     (a) [ ] accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or
>
>     (b) [ ] only accept prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]
>
> ***
>
> NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.
>
> If you have any questions regarding this notice, please contact ___(name and/or department)___at___(telephone number)___.
>
> _____
> Mortgagee
>
> Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.

8

Case 4:17-cv-00376-ODS   Document 1   Filed 05/15/17   Page 8 of 19

27. "The basic disclosure language is necessary because it pertains to the [borrower's] rights under the mortgage." HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2.

28. Further, the lender "must disclose the procedures that must be followed with respect to the payoff and must explain how the amount of the prepayment has been determined. Otherwise, the [lender] must forfeit any interest collected after the date of prepayment." *Id*. at 6.

29. HUD directs lenders that "[n]one of the HUD-required language should be deleted." *Id.* at 2.

**Carrington Has Collected Millions of Dollars in
Post-Payment Interest from FHA- Insured Loans**

30. On information and belief, from August 2, 1985 through January 20, 2015, Carrington has collected millions of dollars in post-payment interest.

31. The National Association of Realtors ("NAR"), estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments after the termination of the mortgage." Kenneth R. Harney, *Interest Costs Don't End With Payoff of FHA Loan*, Chicago Tribune, April 11, 2004, http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers. The NAR further "estimates[s] that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of $587 million." *Id.*

32. "HUD doesn't get the interest, lenders do. In effect, lenders are getting interest for money that isn't outstanding. This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers $449 million in 2012." Peter Miller, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015.

33. "This practice . . . has cost consumers staggering amounts, with estimates ranging into the hundreds of millions of dollars a year during periods when mortgage rates were high." Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell or Refinance*, Washington Post, Sept. 5, 2014, https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html.

34. "Hundreds of thousands of home sellers have had their pockets picked at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off." Harney, Washington Post, September 5, 2014.

35. "[T]he true beneficiaries of the long-standing practice were [lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors." Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330.

36. Today, all relevant government agencies agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

37. On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implemented the Truth in Lending Act (TILA)," which regulates prepayment penalties. 74 Fed. Reg. 43232, 43232 (Aug. 26, 2009). The Board stated that, "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.' When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate." *Id*. at 43257.

38. On January 30, 2013, the Consumer Financial Protection Bureau ("CFPB") issued a final rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)." *See* Fed. Reg. 6408, 6408 (Jan. 30, 2013). Regulation Z defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due." *Id.* at 6444.

39. This definition includes "charges resulting from FHA's monthly interest accrual authorization method." 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014). As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties.... In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**. The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

11

40. Charges for post-payment interest are subject to the Truth in Lending Act. *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sept. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

41. In response to those changes by FRB and CFPB, on August 26, 2014, HUD published a final rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges" in the Federal Register to eliminate post-payment interest charges to borrowers "resulting from FHA's monthly interest accrual amortization method." 79 Fed. Reg. 50835, 50835.

42. Under this regulation, for all "FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount." 24 C.F.R. § 203.558(a). "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date." *Id.*

43. Thus, the CFPB, FRB, and HUD all prohibit post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015 notwithstanding any disclosure form.

## Carrington Did Not Provide the FHA-Approved Form
## Before Collecting Post-Payment Interest

44. Plaintiff obtained an FHA-insured mortgage on October 27, 2004 in the amount of $104,176 from RBC with interest in the amount of 6%.

45. Plaintiffs' promissory note contained the uniform provisions found in every FHA-insured loan per FHA regulations. These uniform provisions include, among others: Paragraph 2. "Borrower's Promise to Pay; Interest" and Paragraph 5 titled "Borrower's Right to Prepay."

46. On approximately April 2, 2015, Plaintiff's FHA-insured loan was sold to Carrington.

47. On approximately November 25, 2016, Plaintiff requested and received a payoff statement from Carrington to refinance her loan also with Carrington.

48. The payoff statement is a form document in which Carrington fills in the borrower-specific contact information.

49. The payoff statement did not contain any of the Disclosures required by HUD.

50. The payoff statement did not inform Plaintiff of the principal or interest amount outstanding on her loan

51. The payoff statement did not inform Plaintiff that she was not required to pay interest for the remainder of the month of November if she paid off the mortgage on the first of the month.

52. The payoff statement did not inform Plaintiff that she would pay post-payment interest if she paid off the mortgage on any day other than the first of the month.

53. The payoff statement did not disclose the procedure that must be followed with respect to the payoff and did not explain how the amount of the prepayment had been determined.

54. Instead, the payoff statement only provided the date, the loan number, and the FHA# along with the following disclaimer:

> This notice is to advise you of the requirements that must be followed to accomplish a prepayment of your mortgage.
> - You may prepay any or all of the outstanding indebtedness due under your mortgage at any time, without penalty.

55. On approximately November 25, 2016, Plaintiff refinanced her loan with Carrington to be disbursed on November 30, 2016. In doing so, Carrington charged, and Plaintiff paid, interest owed for the remainder of the month of November (interest from November 30, 2016 to December 1, 2016) in the amount of $10.22.

56. On approximately November 30, 2016, Plaintiff paid off her loan, including the $10.22 in post-payment interest which Carrington represented it was owed.

## CLASS ALLEGATIONS

57. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of herself and all persons similarly situated, defined as (each person to be termed a "Class Member" and, collectively, all such persons to be termed the "Class Members" or the "Class"):

> Any person who had an FHA-insured loan for which (i) the loan was closed on or before January 20, 2015; (ii) Carrington, as of the date the total amount due on the loan was brought to zero, was the lender, mortgagee, or otherwise held legal title to the note; (iii) Carrington collected interest for any period after the total amount due on the loan was brought to zero; and (iv) Carrington collected post-payment interest during the statute of limitations period applicable for the loan.

58. Plaintiff reserves the right to amend the foregoing class definition and/or to define subclasses before this Court determines whether certification is appropriate.

59. **Numerosity.** The Class is so numerous that joinder of all Class Members is impracticable. On information and belief, there are at least tens of thousands of Class Members. Plaintiff believes that Carrington's records, maintained in the ordinary course, will readily reveal the exact number of Class Members.

60. **Commonality.** This action presents material questions of law and fact common to the Class, including, but are not limited to:

   a. Whether, before collecting post-payment interest on an FHA-insured loan, Carrington complied with the FHA regulation requiring that it provide the borrower with Disclosures in "a form approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment." 24 C.F.R. § 203.558(c) (2014).

   b. Whether Carrington is liable in breach of contract for not providing borrowers with the Disclosures in an FHA-approved form before charging post-payment interest on FHA-insured loans held by Carrington.

61. Carrington uses a form document in response to a borrower's request for a payoff statement. Thus, whether the form complies with HUD regulations is a question applicable to all Class Members.

62. **Typicality.** Plaintiff's claims are typical of the Class's claims. Plaintiff's promissory note contains the same relevant provisions as the rest of the Class. Further, because Carrington uses form payoff statements, Plaintiff has been subject to conduct that is typical of the Class. Carrington has sought to collect post-payment interest from Plaintiff in the same manner that it has sought to collect post-payment interest from the Class.

63. **Adequacy.** Plaintiff and her counsel are adequate to represent the class.

64. **Predominance.** The questions of law or fact common to the Class Members predominate over any questions affecting only individual Class Members. Carrington's course of conduct will be discovered without any need for participation by individual Class Members. The Class's claims present no issues of causation or reliance unique to individual Class Members.

65. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

## COUNT I: BREACH OF CONTRACT

66. Plaintiff incorporates all previous paragraphs as if set forth herein.

67. Plaintiff and each Class Member had a contract with Carrington. As to each, the terms of the contract are set forth in the promissory note. The note is a form contract containing certain provisions that are identical to provisions found in the notes for every FHA-insured loan.

68. In section 2 of the note, "BORROWER'S PROMISE TO PAY; INTEREST," Carrington agreed that "[i]nterest will be charged on unpaid principal" and only "until the full amount of the principal has been paid." Multistate – FHA Fixed Rate Note, USFHA.NTE at 1.

69. In section 5 of the note, "BORROWER'S RIGHT TO PREPAY," Carrington agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . permitted by regulations of the Secretary." *Id*. at 2.

70. The relevant FHA regulation, titled "Handling Prepayments," provides that, "If the prepayment is offered on other than an installment due date, the [lender] ... may require payment of interest to that date, but only if [the lender] so advises the [borrower], in a form approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment." 24 C.F.R. § 203.558(b)(2) (2014).

71. The regulation also provides that "if the [lender] fails to meet the full disclosure requirements of paragraphs (b)(1) and (b)(2) of this section, the [lender] may be subject to forfeiture of that portion of the interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title." 24. C.F.R. § 203.558(b)(3).

72. In addition to the express terms of the promissory note, the law implies a duty of good faith and fair dealing, and Carrington is subject to this duty as well.

17

73. Carrington breached the contract by collecting post-payment interest payments from Plaintiff and Class Members without first providing the mandatory disclosures.

74. Carrington further breached the contract by collecting post-payment interest payments from Plaintiff and Class Members without first providing those disclosures in the FHA-approved form.

75. Plaintiff and the other Class Members were injured by Carrington's breach and seek damages for Carrington's unlawful collection of post-payment interest. They seek damages for interest collected for the period beyond payment of the full unpaid principal.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, request:

a. Trial by jury on all issues so triable;

b. Certification of this action as a class action, including appointing Plaintiff as class representative and undersigned counsel as class counsel;

c. Judgment in favor of Plaintiff and the Class and against Carrington in an amount that is fair and reasonable as determined by the jury trial;

d. Forfeiture and refund of the amount of all post-payment interest collected in connection with Plaintiff's and Class Members payoff or refinance of their FHA-insured mortgage;

e. Pre-judgment interest at the maximum rate permitted by the law;

f. All costs incurred in connection with this action;

g. Reasonable attorneys' fees; and

h. Such other and further relief, at law or in equity, as this Court deems just and proper.

Dated: May 15, 2017                                    Respectfully submitted,

| | |
|---|---|
| Ryan Thompson (TX #24046969) | /s/ *Richard M. Paul III* |
| **WATTS GUERRA LLP** | Richard M. Paul III (MO #44233) |
| 4 Dominion Drive, Bldg 3, Suite 300 | Ashlea G. Schwarz (MO #60102) |
| San Antonio, Texas 78257 | Sue Becker (MO #64721) |
| Phone: (210) 447-0500 | **PAUL LLP** |
| Fax: (210) 447-0501 | 601 Walnut Street, Suite 300 |
| Email: rthompson@wattsguerra.com | Kansas City, Missouri 64106 |
| | Phone: (816) 984-8100 |
| | Fax: (816) 984-8101 |
| | Email: Rick@PaulLLP.com |
| | Email: Ashlea@PaulLLP.com |
| | Email: Sue@PaulLLP.com |

**ATTORNEYS FOR PLAINTIFF**